```
                    UNITED STATES DISTRICT COURT

                            FOR THE

                    WESTERN DISTRICT OF VIRGINIA

                        ROANOKE DIVISION


* * * * * * * * * * * * * * *
UNITED STATES OF AMERICA,    * CRIMINAL NO. 7:20-CR-00004
                             * OCTOBER 22, 2020  11:14 A.M.
            Plaintiff,       * SENTENCING VIA VIDEOCONFERENCE
                             * VOLUME I OF I
vs.                          *
                             *
JAMES ROBERT BANKS,          * Before:
                             * HONORABLE ELIZABETH K. DILLON
            Defendant.       * UNITED STATES DISTRICT JUDGE
* * * * * * * * * * * * * * * WESTERN DISTRICT OF VIRGINIA

APPEARANCES:

For the Plaintiff:       DANIEL P. BUBAR, ESQUIRE
                         KARI KRISTINA MUNRO, ESQUIRE
                         United States Attorney's Office
                         BB&T Building
                         310 First Street, S.W., Room 906
                         Roanoke, VA 24008




For the Defendant:       PAUL G. BEERS, ESQUIRE
                         Glenn, Feldmann, Darby
                         & Goodlatte
                         37 Campbell Avenue, S.W.
                         Roanoke, VA 24011




Court Reporter:          Judy K. Webb, RPR
                         210 Franklin Road, S.W., Room 540
                         Roanoke, Virginia 24011
                         (540)857-5100 Ext. 5333

          Proceedings recorded by mechanical stenography,
transcript produced by computer.
```

U.S.A. v. Banks - 10/22/2020

1          (Court convened at 11:14 a.m.)

2          THE COURT:  Good morning, Mr. Banks.  Can you hear

3 me?

4          THE DEFENDANT:  Yes, ma'am, I can hear you.

5          THE COURT:  Can you see me?

6          THE DEFENDANT:  Yes.

7          THE COURT:  All right.  Are you ready to start?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  Then the United States District Court for

10 the Western District of Virginia is now in session.  My name

11 is Elizabeth Dillon.  I am the judge in this case.

12          Ms. Davis, if you would call our case, please.

13          THE CLERK:  *United States of America versus James*

14 *Robert Banks*, Criminal Action Number 7:20CR4.

15          THE COURT:  And first I'll note that everyone,

16 including Mr. Banks, is appearing today by videoconference for

17 the sentencing hearing.

18          And, Mr. Beers, by statute the Court is required to

19 make a specific finding that the sentencing in this case

20 cannot be further delayed without serious harm to the interest

21 of justice.  Would you like to speak to that?

22          MR. BEERS:  No.  I would agree, Judge.  I think

23 Mr. Banks would like to go ahead and get sentenced and find

24 his place in the federal system rather than wait any longer.

25 It doesn't look like the pandemic is going to be over in the

U.S.A. v. Banks - 10/22/2020

1  next few weeks.  We would like to go ahead.  I think he has

2  signed a video consent that we have filed with the Court.

3          THE COURT:  Very well.  No objection by the

4  government, Mr. Bubar?

5          MR. BUBAR:  No, ma'am, Your Honor.  I'm very

6  appreciative of everyone moving forward on this and look

7  forward to doing so.

8          THE COURT:  Very well.  Then let me next describe the

9  arrangements for his hearing.

10         Mr. Banks is appearing by video link from the Roanoke

11  City Jail, and everyone else is also participating by

12  videoconference.

13         And, Mr. Banks, on your screen I'm not sure if you

14  can see a gallery view or if you just see the person who's

15  speaking.  But participating in this are Ms. Davis, who is our

16  courtroom deputy clerk; myself, of course; your counsel,

17  Mr. Beers.  There's a blank space for a public line, which

18  I'll explain in a moment.  Mr. Bubar, who is the U.S.

19  attorney, and Ms. Munro, I believe, is in the room with him.

20  She's an assistant U.S. attorney.  Ms. Webb is our court

21  reporter.  Mr. Ridgeway is the probation officer, and then

22  Mr. Martel is my law clerk.

23         If anyone at any time has any trouble with the video

24  or audio connection, if you can't see or hear what's

25  happening, please speak up, interrupt me, wave your hand,

U.S.A. v. Banks - 10/22/2020

1  whatever you need to do and we'll stop the proceeding and take

2  care of those issues.

3        Also, if you need to have something repeated, just

4  let me know and I'll repeat myself or have someone else repeat

5  what they've said.

6        I note the Court's prohibition on broadcasting and

7  photographing hearings still applies.  You'll see the

8  recording button is on.  That's for court reporter purposes

9  only.

10       Also, Zoom has a chat feature which allows

11  participants in this hearing to send text messages to one

12  another during this hearing.  Please do not do so thinking

13  that that's a confidential communication, because all of those

14  chats at the end of the hearing will be sent to the host of

15  the hearing, Ms. Davis.

16       And, of course, Mr. Banks, you have the right to a

17  public hearing, and the public has a right to attend hearings.

18  And this hearing has been listed on the Court's public

19  calendar.  We've also listed a telephone number, so any

20  members of the public who wish to call in and listen to this

21  hearing may do so on that public line, and that's why we have

22  the square for the public line.

23       And, Mr. Banks, I note that you have a right to be

24  physically present in open court for a sentencing hearing, but

25  you can waive that right, and know that we're experiencing a

U.S.A. v. Banks - 10/22/2020

1  worldwide epidemic caused by the coronavirus.  The President

2  of the United States and the Governor of the Commonwealth of

3  Virginia have declared states of emergency.  And Congress

4  passed an emergency statute that permits defendants in certain

5  criminal cases to appear by video or telephone conference.

6  And the judicial conference of the United States and the chief

7  judge of this court have concurred in that.

8          Our normal procedure, of course, would be to all meet

9  in the courtroom, in person, but we're attempting as best we

10  can to protect the health and safety of everyone involved and

11  allow the basic functions of the Court to go forward without

12  delay.

13          Given all of that, and I understand you've signed a

14  waiver, do you wish to go forward by videoconference today,

15  Mr. Banks?

16          THE DEFENDANT:  Yes, ma'am.

17          THE COURT:  And do you understand that you have a

18  right to be physically present in open court?

19          THE DEFENDANT:  Yes, ma'am.

20          THE COURT:  And do you understand why you're not

21  physically present in court today?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  Mr. Beers, can you confirm that you went

24  over those rights with your client?

25          MR. BEERS:  Yes.

U.S.A. v. Banks - 10/22/2020

1          THE COURT:  It is indeed the finding of the Court

2     that further delay would seriously harm the interest of

3     justice because Mr. Banks has been incarcerated since the

4     beginning of this year.  We still have continued numbers of

5     persons diagnosed with the coronavirus, so there's a need to

6     protect the health and safety of persons involved.  And if we

7     go forward with sentencing, as Mr. Banks wishes to do, he can

8     be sooner transferred, if he's incarcerated, to the Bureau of

9     Prisons, which would allow him to participate in more

10    programs.

11          And so I do find that he is competent and has

12    knowingly and voluntarily waived his right to appear

13    physically, and knowingly and voluntarily agreed to proceed by

14    videoconference.

15          I further find that the measures taken to provide

16    public access to this proceeding are reasonable under the

17    circumstances.

18          So I'll accept his waiver and we will proceed to

19    sentencing.

20          And I note that with regard to sentencing we're here

21    for two purposes.  The first is for the Court to make a formal

22    announcement as to whether it accepts the plea agreement which

23    was previously taken under advisement, and then for

24    sentencing.

25          Mr. Bubar, is the United States ready to proceed?

U.S.A. v. Banks - 10/22/2020

1          MR. BUBAR:  Yes, Your Honor.

2          THE COURT:  And, Mr. Beers, is Mr. Banks ready to

3    proceed?

4          MR. BEERS:  Yes, Your Honor.

5          THE COURT:  And, Mr. Banks, I did explain to you at

6    your change of plea hearing that I was taking your plea

7    agreement under advisement pending receipt of that presentence

8    investigation report which has been prepared, and I have

9    received and reviewed that.

10         And I note, Counsel, that for any case where there is

11   a binding plea agreement and a sentencing range that is

12   outside the guideline range, I must determine whether it's

13   outside that range for justifiable reasons and then ask --

14   well, and then make that determination.

15         And I note in this case -- so I look to that advisory

16   guideline range in determining that reasonableness, and I note

17   in this case that we have objections to the advisory guideline

18   range.  So I think we first need to determine that advisory

19   guideline range before the Court determines whether the

20   binding range is outside the advisory guideline range for

21   justifiable reasons.

22         But let me first note, Mr. Banks, I want to make sure

23   you know that at any time during this hearing if you need to

24   speak with your attorney confidentially, or if he needs to

25   speak with you, all you need to do is ask me and then

U.S.A. v. Banks - 10/22/2020

1  Ms. Davis will put you in a separate room where you --

2  separate video room where you can have a confidential

3  conversation with each other.

4        So will you let me know, Mr. Banks, if you need to

5  speak with Mr. Beers?

6        THE DEFENDANT:  Yes, ma'am.

7        THE COURT:  And I know Mr. Beers will let me know if

8  he needs to speak with you.

9        So let's first talk about -- well, let me resolve one

10  other issue before we begin.  Mr. Banks, at the time of your

11  plea, you told me you were satisfied with Mr. Beers'

12  representation of you.  Do you remain fully satisfied, sir,

13  with his advice and representation?

14        THE DEFENDANT:  Yes, ma'am.

15        THE COURT:  All right, then.  Then let's see what

16  outstanding objections we have to the presentence

17  investigation report with regard to calculation of the

18  advisory guideline range.  I understand there was an objection

19  to the plus-two enhancement for a firearm.  Is that correct,

20  Mr. Beers?

21        MR. BEERS:  (Indiscernible due to audio issues.)

22        THE COURT:  Mr. Beers, you're echoing.

23        MR. BEERS:  (Indiscernible due to audio issues.)

24        THE COURT:  No, you're still -- I'm getting -- I

25  don't know what's causing that, but it's very difficult to

U.S.A. v. Banks - 10/22/2020

1  hear you.  There's a loud echo.

2          MR. BEERS:  What about right now?

3          THE COURT:  That's good.

4          MR. BEERS:  Okay.  I think I just have to remain

5  super still or something.  I'll do that.

6          THE COURT:  Okay.

7          MR. BEERS:  So, yes, Your Honor, we object to that

8  firearm enhancement.

9          THE COURT:  All right.  And I've read the reasons for

10  your objection.

11          Mr. Bubar, are you arguing on behalf of that firearms

12  enhancement?  It appeared that perhaps the United States was

13  not going to make an argument in that regard.

14          MR. BUBAR:  We are not arguing in this instance, Your

15  Honor.  We appreciate its application originally by the

16  probation office, but feel that it is -- the evidence to

17  support it is a bit attenuated with regard to specificity of

18  firearms that Mr. Banks may have previously possessed and how

19  that really played into or affected the underlying charge and

20  plea agreement in this case.  So we are not offering any kind

21  of evidence in support of it today, and that's where the

22  government is coming from, Your Honor.

23          THE COURT:  All right.  Given that and the vagueness

24  of the timing of the observation of a firearm and whether it

25  was actually possessed or not, then the Court will sustain the

U.S.A. v. Banks - 10/22/2020

1  objection to the plus two for the firearm enhancement and will

2  not apply that.

3          Mr. Beers, did the defendant have any additional

4  objections?  And then we'll get to objections by the United

5  States.

6          MR. BEERS:  No, Your Honor.

7          THE COURT:  Mr. Bubar, it appeared that the United

8  States was arguing that there should have been a plus-two

9  enhancement for obstruction of justice; is that correct, sir?

10         MR. BUBAR:  Your Honor, we would like to put on

11 evidence, certainly, that goes towards obstructive behavior

12 and witness intimidation by the defendant.

13         In our view, we stand by the range that is in the

14 plea agreement for reasons that I'm happy to articulate.

15 We're not putting on any official request for additional

16 enhancements to be applied, but certainly want to argue about

17 the conduct that has to do with Mr. Banks' behavior even after

18 he entered his guilty plea with the Court, and that's

19 continued on up until about a week and a half ago.  So we are

20 very interested in putting that before the Court as to the

21 history, characteristics, and conduct in this case.

22         But, from our perspective, counsel is in favor of a

23 high-end sentence.  We do not -- we are not trying to get out

24 of or have the Court somehow reject or get out of the range

25 that is contemplated by the parties in this case.

U.S.A. v. Banks - 10/22/2020

1          THE COURT:  Well, and, of course, the Court has an

2    obligation to calculate the appropriate advisory guideline

3    range regardless of the plea agreement.  So it's my

4    understanding that you are not asking for a plus-two

5    enhancement for obstruction under 3C1.1; is that correct?

6          MR. BUBAR:  That's correct, Your Honor.

7          THE COURT:  All right.  Because if you were doing

8    that, then I was going to question whether there should be

9    acceptance of responsibility also.

10          But you're not taking the position that he should not

11    receive acceptance of responsibility, are you?

12          MR. BUBAR:  It certainly makes the quantum a little

13    different; I'll say that.  But it's a balancing test.  He's

14    come in early, he's saved the government from having to

15    supersede the indictment against him, so we are not -- we

16    would like to put on the evidence in this matter, but we are

17    not suggesting he should not receive acceptance of

18    responsibility in a formal sense, Your Honor.

19          THE COURT:  All right.  Very well.  Thank you,

20    Mr. Bubar.  I appreciate that.

21          So then it appears, Counsel, that everyone would

22    agree that the total offense level would be a 27, with a

23    criminal history category of VI, for an advisory guideline

24    range of 130 to 162 months.

25          Is that accurate, Mr. Bubar?

U.S.A. v. Banks - 10/22/2020

1          MR. BUBAR:  Yes, Your Honor, I believe that is

2    precisely accurate.

3          THE COURT:  All right.  And Mr. Beers?

4          MR. BEERS:  Yes, Your Honor.  Yes, that's accurate.

5          THE COURT:  Okay.  All right.  And our binding range

6    pursuant to the plea agreement is 96 to 132 months.

7          So at this time I'll ask if any party has any

8    evidence with regard to acceptance of the plea agreement, or

9    if you just have argument?

10          Mr. Bubar.

11          MR. BUBAR:  We don't have any evidence with regard to

12    the acceptance of the plea agreement.  We do have argument and

13    two exhibits we would like to proffer with regard to making

14    our sentencing recommendation, Your Honor.

15          THE COURT:  Mr. Beers, do you have any evidence with

16    regard to acceptance of the plea agreement?

17          MR. BEERS:  No, Your Honor.

18          THE COURT:  And right now I'm just talking about --

19    just trying to determine whether I accept that plea agreement.

20    So just trying to determine if there are justifiable reasons

21    that the binding range is outside the advisory guideline

22    range.

23          So I'll ask for argument with regard to that at this

24    time, Mr. Bubar.

25          MR. BUBAR:  Thank you, Your Honor.  As I've already

U.S.A. v. Banks - 10/22/2020

1  stated and as the government stated in its papers, this is a

2  somewhat unique situation we find ourselves.

3         There are not many defendants who likely come before

4  you in a narcotic space who effectively are willing to, you

5  know, plead to additional charges, which is sort of what we're

6  working to do here.  He's not pleading to a truly additional

7  charge, but conduct is being contemplated herein for the 1- to

8  3-kilogram range of heroin without making the government

9  supersede.

10        And we were also in a situation where for the months

11  of parts of May, June -- excuse me, April and May, and maybe

12  part of June where we were not regularly meeting with grand

13  juries, we have taken this into account and have provided

14  Mr. Banks with an opportunity to plead to the (c)(1)(C) range.

15        We would ask the Court to accept that and find that

16  it is appropriate.  It does capture, I would point out, a

17  portion of a several-month range that is overlapping with the

18  properly newly calculated guideline range.

19        And for those reasons, we would ask that you accept

20  the plea agreement, Your Honor.

21        THE COURT:  Very well.  Mr. Beers, any argument?

22        MR. BEERS:  No, Your Honor.  I would echo what

23  Mr. Bubar said.

24        Effectively what happened here, Judge, is this

25  gentleman has been cooperative from the beginning.  Mr. Bubar

U.S.A. v. Banks - 10/22/2020

1  didn't mention this, but this gentleman even waived asking for
2  a bond hearing.  He's been very realistic.  He didn't even
3  make the government put on evidence to detain him.  He just
4  said, "I don't need a bond.  I'm going to jail.  I've been
5  caught, and I don't need a superseding indictment.  If they
6  said they can supersede, they can prove 1 to 3 kilograms,
7  okay, I'll just plead."  He understood the deal; we're going
8  to handle this through relevant conduct.  That saved the
9  government a bunch of work.  They didn't have to call in a
10  grand jury during the COVID crisis.
11          So as far as obstruction -- well, they're not arguing
12  obstruction.  This is sort of obstruction like in their minds.
13          I would just point one thing out, Judge.  And I don't
14  know if the Judge has read these e-mails they want you to
15  read.  We don't have any problem if the Judge reads them, but
16  the big one, the one that's really the lion's share of their
17  claim of obstructive conduct or behavior, they knew about.
18  They knew about before they entered this plea agreement.  So
19  for them now to come back later and make some noise that he's
20  been obstructive is not fair.  They knew about this e-mail,
21  which is not obstructive, but they knew about it on the way
22  in.
23          So, Judge, did he negotiate a good deal?  Yes.  But
24  it's not that far out of range, and we would ask the Court to
25  accept it for many of the reasons the government has voiced.

U.S.A. v. Banks - 10/22/2020

1   Thank you.

2           THE COURT:   Thank you, Mr. Beers.

3           The Court does formally accept Mr. Banks' plea

4   agreement with the government.  I do note that the advisory

5   guideline range and the binding range in the plea agreement

6   overlap in part.  I also note that it appears that this plea

7   agreement was reached in an effort to avoid having to get a

8   superseding indictment, and it certainly contemplates -- the

9   plea agreement contemplates a larger amount of drugs than

10  Mr. Banks was charged with --

11          MR. BEERS:   Thank you, Judge.

12          THE COURT:   -- and was the product of negotiations by

13  reasonable and professional counsel.

14          I also note with regard to the agreement to dismiss

15  the remaining count that the count to which Mr. Banks pled

16  guilty adequately reflects the seriousness of the offense

17  behavior, so accepting the agreement won't undermine the

18  purposes, the statutory purposes of sentencing or the

19  sentencing guidelines.

20          So I will accept the plea agreement.  I do find that

21  it's reasonable and mutually beneficial to all parties.

22          So we will go forward with the sentencing hearing,

23  with the Court having accepted the binding plea agreement with

24  a binding sentencing range of 96 to 132 months.

25          I have reviewed the presentence investigation report

U.S.A. v. Banks - 10/22/2020

1   as indicated, I've received the sentencing memos, and I've

2   also reviewed the documents and letters that were submitted to

3   the Court.

4          At this time, does either party have any other

5   documents or correspondence for the Court?

6          Mr. Bubar?

7          MR. BUBAR:  Yes, Your Honor.  We have two exhibits

8   that we have submitted to the Court, through the clerk, for

9   review and consideration.  I will reference them if the Court

10  accepts them.

11         The first is a February 18th of 2020 e-mail that

12  turned into a Facebook post called Natasha's post.  That would

13  be Exhibit 1.

14         And Exhibit 2 is an email, a back-and-forth e-mail

15  with an Ebony Saunders and James Banks.  We would also like to

16  reference that in our argument.

17         So the government would proffer those two exhibits,

18  in addition to making arguments.

19         THE COURT:  Mr. Bubar, what was the date of that

20  second e-mail?

21         MR. BUBAR:  I'm sorry.  Yes, October 10th of 2020.

22  One was sent at 1:46 p.m., then and the follow-up e-mail was

23  1:51 p.m., about five minutes later.

24         THE COURT:  All right.

25         MR. BUBAR:  So those would be the two documents that

U.S.A. v. Banks - 10/22/2020

1  we would submit in this matter, Your Honor, today.

2          THE COURT:  Any objection to those, Mr. Beers?

3          MR. BEERS:  Judge, we don't object on authenticity

4  grounds or anything like that.  I'm not sure I understand the

5  relevance of this.  They cannot bear their burden of proof on

6  obstruction.  There's a standard.  They can't do that, so

7  they're trying to go through the back door.  So I don't think

8  it's relevant.  But as far as authenticity, we have no

9  objection.

10          THE COURT:  All right.  The Court is going to accept

11  the exhibits and consider that with regard to all factors that

12  the Court considers in determining an appropriate sentence.

13  So while it's not provided to the Court for the purpose of an

14  enhancement, it is a part of the factual circumstances of this

15  matter.  So I will accept those exhibits and I will give those

16  such consideration as I deem appropriate.

17      (Government's Exhibit Numbers 1 and 2 were marked and

18  received.)

19          THE COURT:  All right.  Any other documents for the

20  Court?

21          MR. BUBAR:  No, Your Honor.

22          MR. BEERS:  No, Your Honor.

23          THE COURT:  Very well.  Very well, then.  Does either

24  party -- well, let me do this first:  Let me go ahead and --

25  having determined the objections already to the presentence

U.S.A. v. Banks - 10/22/2020

1  investigation report, let me note that I accept the

2  presentence investigation report prepared by Mr. Ridgeway with

3  the deletion of the plus two for the firearm enhancement.

4      And thank you, Mr. Ridgeway, for your work on that

5  report.  I greatly appreciate it.

6      And then I'll go ahead and state the statutory

7  penalties for the offense.

8      The maximum possible penalty provided by law for

9  Count One is a term of imprisonment of 20 years.

10      There's a maximum fine of not more than $1 million,

11  and the Court must impose a mandatory special assessment of

12  $100 per count, for a total of $100.

13      There's a mandatory term of supervised release of at

14  least three years, and that term can be longer.

15      In certain cases, restitution may be ordered, and

16  fees may be imposed to pay for incarceration and supervised

17  release.

18      And in certain cases the Court may require the

19  forfeiture of certain property to the government.  But I do

20  not believe there is a forfeiture issue in this case.

21      Is that correct, Mr. Bubar?

22      MR. BUBAR:  Yes, Your Honor.

23      THE COURT:  Any objection, Counsel, to those

24  statutory penalties as stated?

25      MR. BUBAR:  No, Your Honor.

U.S.A. v. Banks - 10/22/2020

1          MR. BEERS:  No, Your Honor.

2          THE COURT:  Very well.  Then I'll calculate the

3   advisory guideline range.

4          The base offense level is under 2D1.1, holding

5   Mr. Banks accountable for at least 1 kilogram but less than

6   3 kilograms of heroin.  That is a 30.  Two levels -- I'm

7   sorry.  We're not adding any levels.

8          Mr. Bubar, I didn't ask you if you're making the

9   motion for the one-level reduction for acceptance pursuant to

10  the plea agreement?

11         MR. BUBAR:  Yes, Your Honor.

12         THE COURT:  All right.  I will grant that motion.  So

13  there's a three-level reduction for acceptance under 3E1.1.

14         So the total offense level in this case is that of

15  27.

16         Mr. Banks has numerous prior convictions, and eight

17  of those were scored under the guidelines, yielding a criminal

18  history score of 15.  The convictions that were scored were

19  misdemeanor assault and battery, misdemeanor disorderly

20  conduct, misdemeanor identity theft, misdemeanor destroy

21  property, felony malicious wounding, misdemeanor drive on a

22  suspended operator's license, two instances of that, and

23  felony obstruction of justice.

24         The defendant committed the instant offense while

25  under a criminal justice sentence, and two points are added.

U.S.A. v. Banks - 10/22/2020

1   So the resulting total is 17 points, which places him in a

2   criminal history category of VI.

3          And the advisory guideline range for an offense level

4   of 27 and criminal history category of VI is a term of

5   imprisonment of 130 to 162 months.

6          The advisory guideline range for supervised release

7   is three years.

8          And the range for a fine, did that change,

9   Mr. Ridgeway, with the change, the lower level?

10          THE PROBATION OFFICER:  It did, Your Honor.  It is

11   now 25,000 to 1 million.

12          THE COURT:  All right.  The advisory guideline range

13   for the fine is then 25,000 to $1 million.

14          Any objection to those calculations, Counsel?

15          Mr. Bubar?

16          MR. BUBAR:  No, Your Honor.

17          THE COURT:  Mr. Beers?

18          MR. BEERS:  No, Your Honor.

19          THE COURT:  Then I'll be glad to hear any testimony,

20   receive any evidence with regard to the appropriate sentence

21   within the binding range.

22          Does either party have any testimony or other

23   evidence that the Court has not already received?

24          Mr. Bubar?

25          MR. BUBAR:  We have no additional evidence, Your

U.S.A. v. Banks - 10/22/2020

1   Honor.

2        THE COURT:  All right.  Mr. Beers?

3        MR. BEERS:  Defense has no additional evidence.

4   Mr. Banks would like to allocute.

5        THE COURT:  Certainly.  And I'll give him the chance

6   to do that after I've heard argument of counsel.

7        So, Mr. Bubar, I'll be glad to hear from the United

8   States as to the appropriate sentence in this case, sir.

9        MR. BUBAR:  Thank you, Your Honor.

10       The government is not going to rehash the sentencing

11  memo in total, but would like to obviously highlight just a

12  few things.

13       As we've already stated today, this is a case where

14  the defendant did some positive things once he was caught,

15  once he was charged, by pleading guilty, not requiring the

16  government to supersede the indictment against him.  And he

17  agreed that he should be responsible for 1 to 3 kilograms of

18  heroin, which is, on its own, a fairly remarkable amount of

19  heroin, a good amount of distribution to other dealers,

20  dealers in the area, in the Roanoke Valley.

21       The government took that sort of cooperative posture

22  into account when it offered him the C range that it offered,

23  and credited him for that.

24       But also, I want to really make clear that the

25  defendant's actions are very severe.  The evidence shows that

U.S.A. v. Banks - 10/22/2020

1  he dealt and distributed within this area a great deal of

2  heroin over the course of years.  The PSR captures this and

3  does so very well.

4        A number of witnesses came forward and stated very

5  specific ways, amounts, locations, and details about his

6  heroin drug -- his heroin distribution network.  But it is

7  also worth noting that the evidence included cocaine,

8  methamphetamine, et cetera, that were not really captured or

9  taken into account in this case or in this plea agreement, but

10  are still very concerning as well.  This evidence is included

11  in the PSR, I would note, without any objection by the

12  defendant.

13        This is very significant.  The Court is well aware of

14  the ill effects of heroin, the scourge of heroin in Roanoke

15  and the addiction that it can lead to, the deaths that it can

16  lead to by people who use it.  Meth is on the rise as well.

17  It's a very troubling situation that Mr. Banks contributed to

18  for years.  Using other distributors, he supplied many others

19  with narcotics.

20        Also, as has been discussed, and even the Court today

21  already acknowledged the pretty astounding criminal history

22  that Mr. Banks comes before the Court with today.  He has been

23  convicted of very many misdemeanors.  But also very troubling

24  to the government is the violent malicious wounding felony

25  that is on his record where he shot another person at close

U.S.A. v. Banks - 10/22/2020

1  range.  I'll point out that he served a very, very short

2  sentence in the state system for that.

3        He also fled from police, ran over an officer's foot

4  while doing so, when the officer was trying to intervene when

5  Mr. Banks was seen by the officers assaulting a female.

6  Again, violent, violent conduct.

7        Because of all of these convictions, he was in the

8  state system and has been in and out of the state system an

9  incredible amount of time over his adult life, and has

10 obviously learned almost nothing from that, and is now before

11 Your Honor facing a very significant sentence, and rightly so.

12       He comes before the Court with support, support of

13 his family, and that's a good thing.  His father has written

14 you a letter.  His father has a legitimate business,

15 apparently, does have a business.  Mr. Banks comes to you with

16 almost no work history of any legitimate nature.

17       But something that's worth pointing out about his

18 father's letter and his father's shop is that Mr. Banks sold,

19 if the evidence is to be believed -- and, again, it's not

20 objected to -- Mr. Banks sold out of, sold drugs, distributed

21 heroin and distributed heroin in this very case out of his

22 father's shop, and did so for a very long period of time.

23       The Court could have considered, certainly, and it

24 could have applied the enhancement for use of a dwelling.  As

25 the Court is aware, a dwelling is not -- it does not have to

1  be a physical place where someone lives, but a structure

2  that's used, co-opted to deal drugs out of.  And that's

3  certainly what Mr. Banks' father's shop was and had become.

4  It was a meeting place for him to sell drugs.  It was a place

5  where he stored drugs that one of the witnesses saw, and saw

6  over the course of time.

7       So it's concerning that his father's place of

8  business, while it is an auto mechanic shop, was also a place

9  that he dealt drugs and did so for a course of years.  And

10  it's concerning that that facilitation happened and continued

11  to happen for a long period of time.  And none of that, of

12  course, is acknowledged in his father's letter, who I'm sure

13  doesn't want to see him go to prison for very long.

14       Also, in another letter that Your Honor has received,

15  the letter from Natasha, Natasha is the person who helped

16  Mr. Banks post the threat, the threat against two people that

17  Mr. Banks thinks are witnesses against him, and helped

18  facilitate that witness intimidation that I'm also going to

19  speak about.

20       It's incredibly troubling to see Mr. Banks use others

21  to, even from jail, intimidate and threaten other individuals

22  who he thinks are witnesses against him.

23       I would ask that we turn to Government's Exhibit 1,

24  which is an e-mail that was quite clearly sent from the

25  Roanoke City Jail; it says so right at the top from Mr. Banks

1  on February 18th, 2020.  All it takes is a cursory reading,

2  and I'm not going to read the whole thing to the Court, but he

3  names a couple of different individuals who Mr. Banks

4  obviously thinks is working against him.  It references going

5  to the grand jury and testifying for over an hour and wearing

6  a wire, calls these individuals very crass names, and I think

7  very chillingly at the very end, you know, instructs, "Know

8  you can't sleep, police ass bitch."  And I apologize for that

9  language, Your Honor, but it says this.  These are Mr. Banks'

10 words that he used to threaten and intimidate people who he

11 thought were a part of this case.

12        Troubling as that was, that was all the way back in

13 February 18th, 2020.

14        And in Exhibit 2, it shows that not a lot has changed

15 now that we're right before sentencing.

16        At the bottom of that page, on page 1, there's an

17 e-mail from Mr. Banks to another female, Ebony Saunders, and

18 it instructs her to set up a PACER account, an account with

19 the Court's website, to, "Look how much time your girl got off

20 for telling on me.  They took off five years.  But I want you

21 to post that after I go to court."  Presumably after he's

22 sentenced, he wants this individual to post about someone who

23 he believes cooperated against him and got a sentence

24 reduction.

25        Within a matter of minutes, Ms. Saunders writes back

U.S.A. v. Banks - 10/22/2020

1  and says, "Okay.  I'm setting everything up now.  It said I

2  GTA approved, get approve first.  I uploaded my idea."  I'm

3  not sure what all that means.  But he's ready to do what he

4  wants and post about what he's asking, who he -- trying to out

5  people who he thinks are witnesses, I think quite obviously

6  for the point of intimidating them, outing them to the public.

7  If those aren't threats, calling someone a "police blank,

8  blank," and telling them they'd better know they can't sleep

9  at night, if that's not threatening, I don't know what is.

10        It's troubling conduct, it's who Mr. Banks is, it's

11  the way that he's conducted himself even after pleading

12  guilty, and it is troubling.

13        Your Honor, you're obviously charged with the 3553(a)

14  factors and establishing a punishment based upon the

15  seriousness of the case -- it's an incredibly serious case,

16  the large-scale distribution of heroin in the Roanoke

17  Valley -- providing a just punishment for that offense; the

18  history and characteristics, which we've talked about at some

19  length, which includes a lengthy and violent criminal history

20  pattern.

21        But there's also deterrence punishment, both specific

22  and general deterrence.  Mr. Banks needs to specifically be

23  deterred from doing these crimes again.  He hasn't been

24  deterred by the state system.  His behavior has only

25  increased, I would argue.

U.S.A. v. Banks - 10/22/2020

1     But then there's general deterrence.  Anyone who's

2  tempted to distribute these narcotics, to behave violently in

3  their past, to do things like that, to continue to do it even

4  after having, you know, dozens of misdemeanor and felony

5  convictions, a strong and significant sentence would send a

6  true message that this behavior will simply not be tolerated.

7     The government asks for a sentence on the high end of

8  the mandatory range of 132 months.

9     Thank you, Your Honor.

10     THE COURT:  Mr. Bubar, one question for you.  With

11  regard to the e-mail in February of 2020, did the United

12  States know about that e-mail prior to entering into the plea

13  agreement?

14     MR. BUBAR:  Yes, Your Honor.

15     THE COURT:  All right.  Thank you.

16     MR. BUBAR:  Thank you very much, Your Honor.

17     THE COURT:  All right.  Mr. Beers, I'll be glad to

18  hear argument on behalf of Mr. Banks.

19     MR. BEERS:  Thank you, Your Honor.  And I want to

20  thank the Court for appointing me to represent Mr. Banks.

21  It's been a pleasure.  He's been nothing but cooperative.  Not

22  all of my clients are nothing but cooperative.  But he's been

23  perfectly cooperative, as has his father.

24     His father owns a very legitimate business off 10th

25  Street.  I've been there, Judge.  In fact, I'm thinking about

U.S.A. v. Banks - 10/22/2020

1  having my car serviced there.  It's a very well-known garage,

2  auto mechanics garage in walking distance of my office.

3       So he's been a nice client and certainly comes from a

4  nice family.

5       Now, Judge, does he have a bad criminal record as

6  Mr. Bubar said?  Yes.  Is this a serious crime involving

7  narcotics which is a scourge in our community?  Yes, all that

8  is true.

9       But he's been sentenced -- you know, the range runs

10 from eight years, Judge, on the low end, which is a lot of

11 time.  So if we focus on that, which is the ultimate

12 question -- is that sufficient but not greater than necessary

13 to punish this gentleman? -- the answer is yes.  That is a

14 long sentence for someone who has come in and, by everyone's

15 agreement, not played games, admitted his guilt early.  That

16 is a long sentence.  It's plenty of time for all the

17 congressional objectives under 3553 -- 353 to be secured and

18 obtained.

19       I mean, so I would ask the Court to consider a

20 sentence at the very low end of that range of eight years.

21       Your Honor, again, the government is trying to

22 have -- again, have it both ways with this alleged threat.

23 Since they brought it up, let me address that before the Court

24 pronounces sentence.

25       They have -- the one on February 18, which they knew

U.S.A. v. Banks - 10/22/2020

1  about early, was never -- you know, they're trying to argue

2  it's a threat.  They point to no follow-up posts or

3  communications between these two inmates.

4          When they got him detained, Judge, when the

5  government got Mr. Banks' detained, I guess they could have

6  asked for an order, "Don't communicate with any inmates,

7  including those whom you believe are cooperating witnesses

8  against you."  They didn't do that.  Even after this, they

9  didn't ask for a court order, because this is not a threat.

10 If it were a threat, they would have moved for the

11 enhancement.  They didn't because it's not a threat, and I

12 think I outlined why it's not a threat.

13         However they're characterizing this, as behavior or a

14 sentencing guidelines enhancement, they've got a burden to

15 show that this is something other than an exercise of his

16 right to freedom of speech.  His First Amendment right to

17 speak to inmates and to others is not diminished simply

18 because he's in jail.  Were he on bond and ordered not to

19 speak to others, other potential witnesses, we would have a

20 different case.  But he wasn't.

21         Now, he's not free to threaten anyone, I agree.  But

22 there's no threat.  The truth is, Judge, these two people were

23 friends for many, many years.  Many, many years they played

24 pool together on Williamson Road.  Mr. Bubar knows that;

25 that's in the discovery.

U.S.A. v. Banks - 10/22/2020

1              You can tell they know each other quite well.  In

2    fact, he says, "Love your bro."  He is speaking to a female.

3    We all know who this is.  This is a female, "Love your bro."

4    I mean, that's the tenor.  They are good friends and he is

5    angry she has turned on him, that's true.  But where is the

6    threat?  "Love your bro.  Know you can't sleep."  That's

7    not -- what he's saying is I'm sure you can't sleep because

8    you know you've exaggerated and told lies about me.

9              There's nothing wrong with him expressing that

10   opinion to his friend or former friend, nothing.  He's got a

11   First Amendment right to speak his mind.  There's no threat.

12   He didn't say, "I'm going to get you" or anything like that.

13   He says, I'm sure your conscience won't let you sleep.  That's

14   all he's doing; he's saying your subconscious is going to

15   bother you because you know you're not telling the truth.  So

16   I don't understand the threat here.

17             Government's Exhibit 2, I still don't understand the

18   point.  I guess they're pointing down to this e-mail where it

19   says, "I want you to get" -- to this lady friend, Ebony

20   Saunders, "I want you to get a PACER account."  Again, First

21   Amendment activity.  Ms. Saunders is allowed to have a PACER

22   account if she's willing to pay -- set up the PACER account.

23             He said, "I want to know" -- as I understand it, "I

24   want to know how much time this cooperator is getting off her

25   sentence because she testified against me."  What is wrong

U.S.A. v. Banks - 10/22/2020

1  with that?  And he said, "After you get it, I want you to post

2  it."  So he wants to know from her, because he's going to be

3  locked up, he's curious how much of a break is she really

4  going to get?  I don't see a threat.  I don't see any

5  inappropriate conduct here, Judge.

6         Is he angry at his former friend for, in his mind,

7  exaggerating claims against him and telling lies?  Yes.  But

8  that's natural.  So I ask the Court to disregard that.

9         Does he use vulgar language, inappropriate language?

10  Yes.  There's no question about that here.  But so what?

11  That's not a threat, Judge, so I think it's a distraction.

12         What we have here is a lengthy range that begins at

13  eight years, and I think that's where the Court should end

14  this case, with a sentence of eight years.  Again, I think

15  that's more than sufficient to punish this gentleman who, from

16  the beginning of this case, has not played games.

17         Thank you, Your Honor.

18         THE COURT:  Thank you, Mr. Beers.

19         Any other argument, Counsel, before we hear from

20  Mr. Banks?

21         MR. BUBAR:  Sorry.  Your Honor, I was just simply

22  going to say that I neglected to point out in the middle of

23  the first post there's a reference to the government

24  protecting their snitches.  And, of course, he calls this

25  person a "police ass bitch" at the very end of the message.

U.S.A. v. Banks - 10/22/2020

1  And in the second, he talks about posting it, which very much

2  means posting it on Facebook from the government's

3  perspective.  Thank you, Your Honor.

4         MR. BEERS:  And --

5         THE COURT:  Go ahead, Mr. Beers.

6         MR. BEERS:  I would like to point out that they

7  haven't brought the cooperating witness to testify that the

8  cooperating witness felt threatened in any way.  There's no

9  evidence of that.

10         Anyway, thank you, Your Honor.

11         THE DEFENDANT:  Judge, may I use the restroom?

12         THE COURT:  Mr. Banks, I'm going to give you an

13  opportunity to speak right now.  But before I do that, is

14  there anything you need to speak with Mr. Beers about

15  confidentially?

16         THE DEFENDANT:  Yes, can I take a short break and use

17  the restroom, please?

18         THE COURT:  Oh, okay.  All right.  Certainly.  If we

19  can get the deputy there, get the attention of the deputy

20  there to give you a restroom break, then when we come back,

21  Mr. Banks, it will be your turn to say whatever you want to

22  say.

23         THE DEFENDANT:  Okay.  Thank you.

24     (Recess taken from 11:56 a.m. to 11:59 a.m.)

25         THE DEFENDANT:  Sorry about that.

U.S.A. v. Banks - 10/22/2020

1           THE COURT:  All right.  Let's wait for the U.S.

2    attorney to start the video back up.  There we go.

3           All right, Mr. Banks, now is your opportunity to tell

4    me anything you would like to say in mitigation of your

5    sentence, sir.  You may tell me whatever you want me to know

6    before I impose your sentence.

7           THE DEFENDANT:  I would like to basically apologize

8    to the courts again, like I did in my letter.  I said all the

9    things that I did; they were wrong.  And that's not going to

10   be the person I am when I get out of rehabilitating myself

11   after prison, taking up my trades, obtaining my GED and things

12   like that.

13          I mean, a lot of this stuff I did out of anger, like

14   Mr. Beers pointed out on the e-mail and stuff, but it was

15   never a threat to anybody.  I never would want no harm to come

16   to no one.  Basically, when I come, when I come back to

17   society, I'll be a different person.

18          That's all I have to say, Your Honor.  Thank you for

19   your time.

20          THE COURT:  Thank you, sir.  Okay.

21          After calculating the guidelines, determining the

22   objections, and reviewing all the evidence that was submitted

23   to the Court, and the letters that were submitted, and having

24   accepted the binding plea agreement, and having heard argument

25   and heard from Mr. Banks, I must consider the relevant factors

U.S.A. v. Banks - 10/22/2020

1  set out by Congress at Title 18, United States Code, Section

2  3553(a), and ensure that I impose a sentence that is

3  sufficient but not greater than necessary to comply with the

4  purposes of sentencing.

5         The purposes include the need for the sentence to

6  reflect the seriousness of the crime, promote respect for the

7  law, and provide just punishment for the offense.  The

8  sentence should also deter criminal conduct, protect the

9  public, and promote rehabilitation.

10        In addition to the guidelines and policy statements,

11 I consider -- and, of course, the binding plea range in this

12 case, I consider the nature and circumstances of the offense,

13 Mr. Banks' history and characteristics, the need to avoid

14 unwarranted sentence disparities among similarly situated

15 defendants, and the types of sentences available.

16        And taking all of these factors and the binding plea

17 agreement into account, and the advisory guideline range into

18 account, I believe an appropriate sentence in this case is

19 that of 132 months, with a supervised release term of three

20 years, a $200 fine, and the mandatory $100 special assessment.

21        And the reasons for this sentence are as follows:  I

22 note that Mr. Banks committed a serious offense, and his plea

23 agreement accounts for even larger amounts of drugs that he

24 brought into the community.  I find those drug offenses to be

25 serious, the amount of drugs to be serious.  I note that he

U.S.A. v. Banks - 10/22/2020

1  admits to engaging in this conduct for at least two years.

2  And it appears to the Court he was engaging in that -- he's

3  not a substance abuser of those substances in any event, so it

4  appears he was engaging in that conduct for profit.

5          And I note, especially given his previous egregious

6  criminal history and lifetime criminal history, and his

7  involvement in violence and drugs -- violence and guns in the

8  past, that while he was not -- he's not charged with using

9  firearms in this offense, and he's not charged with violence

10 in this offense, but he has a history of that.  And I note

11 that the combination of all of those things is very, very

12 dangerous to the community, and the Court takes that very

13 seriously.

14         I find, given his criminal history, that there is a

15 need, an especially high need in this case, and the reason for

16 the high end of the range, to deter him, to punish him, to

17 promote respect for the law, and to protect the public.

18         I note that he did write me a letter, which I read,

19 and he asked -- he told me about his desire to rehabilitate

20 himself and go back into society and live a crime-free life.

21 I note that he's an abuser of alcohol, and I note that he has

22 the support of his family.

23         But I am very troubled -- I know that initial e-mail

24 in February was pre-plea agreement, so the government could

25 have considered that easily in the plea agreement itself.  But

U.S.A. v. Banks - 10/22/2020

1  I have to admit that any credibility he had with this Court in

2  the letter he wrote to me, and what he's told me today, is

3  substantially discounted by the e-mail he sent on

4  October 10th, 2020, this month, this month, seeking to expose

5  persons who he believes testified against him, and noting,

6  "Post after I go to court."  So "I don't want this to affect,

7  perhaps, what the Court does with me.  I, perhaps, want to

8  pull the wool over the Court's eyes."

9       And so given that conduct, the Court discounts the

10  sincerity with which he desires to rehabilitate himself.  And

11  so for all of those reasons, I believe a sentence of 132

12  months is appropriate.

13       Do the parties have any objection to the procedure by

14  which the Court determined the sentence?

15       Mr. Bubar?

16       MR. BUBAR:  No, Your Honor.

17       THE COURT:  Mr. Beers?

18       MR. BEERS:  No, Your Honor.

19       THE COURT:  Do you know of any reason, other than the

20  reasons already argued, why the sentence should not be imposed

21  as stated, Mr. Bubar?

22       MR. BUBAR:  No, Your Honor.

23       THE COURT:  Mr. Beers?

24       MR. BEERS:  No, Your Honor.

25       THE COURT:  Then pursuant to the Sentencing Reform

U.S.A. v. Banks - 10/22/2020

1  Act of 1984, and having considered the factors noted in Title

2  18, United States Code, Section 3553(a), and after having

3  consulted the advisory guideline, and being bound by the

4  binding range in the plea agreement, it is the judgment of the

5  Court that the defendant, James Robert Banks, is hereby

6  committed to the custody of the Bureau of Prisons to be

7  imprisoned for a total term of 132 months.

8       I will recommend to the Bureau of Prisons that you

9  receive appropriate substance abuse treatment while you're

10  incarcerated for your alcohol abuse problem.  Is there a

11  request for placement, Mr. Beers?

12       MR. BEERS:  Petersburg, Your Honor.

13       THE COURT:  Petersburg?  And the reason for that?

14       MR. BEERS:  Proximity.  He's from Roanoke.

15       THE COURT:  Okay.

16       MR. BEERS:  Beckley would also be an option.

17       THE COURT:  I'll recommend Petersburg first and then

18  Beckley thereafter, so you can be close to your family.

19       I noted that there was some desire to receive some

20  vocational training in plumbing or electrical.  That would be,

21  perhaps, McDowell or Cumberland.

22       Is it still Petersburg or Beckley the desired

23  location, Mr. Beers?

24       MR. BEERS:  I think so, Judge, yes.

25       THE COURT:  Then I'll make that recommendation.  Of

1  course, I can't control that, but I'll make the

2  recommendation.

3          And upon release from imprisonment, Mr. Banks shall

4  be on supervised release for a term of three years.  He must

5  report to the probation office in the district to which he is

6  released within 72 hours of release from the custody of the

7  Bureau of Prisons, and he must comply with the following

8  mandatory conditions of supervision.

9          Mr. Banks, you must not commit another federal,

10 state, or local crime, you must not unlawfully possess a

11 controlled substance, and you shall refrain from any unlawful

12 use of a controlled substance.

13         You must submit to one drug test within 15 days of

14 release from imprisonment, and at least two periodic drug

15 tests thereafter as determined by the Court.

16         You must not possess a firearm, ammunition,

17 destructive device, or dangerous weapon.

18         You must cooperate in the collection of DNA as

19 directed by the probation officer.

20         You also must comply with the standard conditions of

21 supervision that have been adopted by this Court, as well as

22 the following special conditions:

23         Following release from imprisonment, the Court will

24 evaluate your status and determine whether after-incarceration

25 substance abuse rehabilitation is necessary and appropriate.

U.S.A. v. Banks - 10/22/2020

1    And if deemed appropriate, you shall participate in a program,

2    as designated by the Court upon consultation with the

3    probation officer, until such time as you have satisfied all

4    the requirements of the program.

5           You shall reside in a residence free of firearms,

6    ammunition, destructive devices, and dangerous weapons.

7           And you shall submit your person, property, house,

8    residence, vehicle, papers, or office to a search conducted by

9    an United States probation officer.  Failure to submit to a

10   search may be grounds for revocation of your release.

11          And you shall warn any other occupants that the

12   premises may be subject to searches pursuant to this

13   condition.

14          An officer may conduct a search pursuant to this

15   condition only when reasonable suspicion exists that you have

16   violated a condition of your supervision and that the areas to

17   be searched contain evidence of this violation.

18          It's ordered that you pay to the United States a

19   special assessment of $100, which is due and payable

20   immediately.

21          And it's further ordered that you pay to the United

22   States a fine of $200.  That is below the guideline range

23   because I find that you don't have the ability to pay a

24   guideline fine.

25          I'm also going to waive interest on that fine.

U.S.A. v. Banks - 10/22/2020

1          And having assessed your ability to pay, the total

2   criminal monetary penalties are due immediately and payable as

3   follows:  The $100 special assessment is payable immediately.

4   The $200 fine can be paid during the term of imprisonment.

5          Payment shall be made in equal monthly installments

6   of $25, or 50 percent of your income, whichever is greater, to

7   commence 60 days after the date of this judgment.  And payment

8   in equal monthly installments of $25 during the term of

9   supervised release, to commence 60 days after release from

10  imprisonment.

11         Is there a government -- does the government have a

12  motion, pursuant to the plea agreement, to dismiss Count Two

13  of the indictment, Mr. Bubar?

14         MR. BUBAR:  Yes, Your Honor.  We would ask that you

15  do that, please.

16         THE COURT:  I'll grant that motion and dismiss Count

17  Two of the indictment.

18         I note, Mr. Banks, that you have waived the right to

19  appeal your sentence, and that waiver is binding unless the

20  sentence exceeds a statutory maximum or is based on a

21  constitutionally impermissible factor.  And if you undertake

22  to appeal despite your waiver, you may lose the benefits of

23  your plea agreement.

24         If a right of appeal does exist and you're unable to

25  pay the cost of an appeal, sir, you may apply for leave to

U.S.A. v. Banks - 10/22/2020

1   appeal without prepayment of that cost.

2          And any notice of appeal must be filed within 14 days

3   of entry of the judgment or within 14 days of a notice of

4   appeal filed by the government.  And if requested, Mr. Banks,

5   the clerk will prepare and file a notice of appeal on your

6   behalf.

7          Mr. Banks, you are fortunate to have the support of

8   family members and friends in this case.  And I'm told by

9   those people that you are a good father to your children, and

10  I would suggest to you, Mr. Banks, that, regardless of your

11  incarceration, you can continue to be a good father to your

12  children, you can continue to support them, you can contact

13  them, you can also continue to be a good son to your father

14  and be supportive to those people who love and care about you,

15  sir.  And I hope they are supportive of you.

16         And, Mr. Banks, I -- while I told you I doubt -- I

17  have reason to doubt the sincerity of what you told me in your

18  letter, I do hope that you have a desire to turn your life

19  around and to lead a crime-free life from here on out.

20         I hope that you do want to be rehabilitated, you do

21  want to stop abusing alcohol, which appears to have caused

22  some of your criminal background, in any event.  But you are

23  going to have to want that for yourself, Mr. Banks.  Other

24  people wanting it for you doesn't do the trick.  You're going

25  to have to dedicate yourself to that if that's what you want

U.S.A. v. Banks - 10/22/2020

1  to do.  And you're going to have to hang out with people that

2  don't commit crimes and support you in being sober.

3        And, Mr. Banks, I always end my sentencings with a

4  quote, and I have two quotes for you.  One is by Sophocles,

5  and he said, "It is a painful thing to look at your own

6  trouble and know that you yourself and no one else has made

7  it."

8        And the second is by a motivational speaker named

9  Dennis Waitley.  And he said, "A sign of wisdom and maturity

10  is when you come to terms with the realization that your

11  decisions cause your rewards and consequences.  You are

12  responsible for your life, and your ultimate success depends

13  on the choices you make."

14        So, Mr. Banks, I hope you can make those good choices

15  going forward.  I will remind you that when you are on

16  supervised release, the probation office is there to assist

17  you.  So if you find yourself in need of programs to help you,

18  to help you be successful in a crime-free, sober life, I want

19  you to reach out to the probation office and ask for help.

20  And I do wish you the greatest success, sir.

21        Is there anything else we need to take up in this

22  case today, Counsel?

23        Mr. Bubar?

24        MR. BUBAR:  No, Your Honor.  Thank you.

25        THE COURT:  Mr. Beers?

U.S.A. v. Banks - 10/22/2020

1        MR. BEERS:  No, Your Honor.  Thank you.

2        THE COURT:  Mr. Ridgeway, anything I missed?

3        THE PROBATION OFFICER:  No, Your Honor.

4        THE COURT:  Very well.  Then Mr. Banks is remanded to

5   the custody of the United States Marshal, and we are in

6   recess.

7        Thank you, everyone.  And stay well, everyone.

8        MR. BEERS:  Thank you, Your Honor.

9        MR. BUBAR:  Thank you, Your Honor.

10        THE DEFENDANT:  Thank you, Mr. Beers.

11     (Court recessed at 12:12 p.m.)

12                    CERTIFICATE

13   I, Judy K. Webb, certify that the foregoing is a

14   correct transcript from the record of proceedings in

15   the above-entitled matter.

16

17   /s/  Judy K. Webb            Date: 3/31/2021

18

19

20

21

22

23

24

25